There are two categories of errors here by the Board, either which of which warrants reversal, and I will begin with the claim construction errors and then proceed to the alternative findings for anticipation. The Board made three fundamental errors in reading this claim overly broad. The first thing it did was it took the word signal, which appears in the claim and for the courts and those at page 10 of the brief, our blue brief, is a readable version of it. It took the word signal and equated it with data or a value, despite that data and signal are both used in the claim and they are used very differently. It then took a second step and even though the claim lists the steps in a sequence, read the right step, the first step, and the second step, the signal step, as being able to either be merged together or being able to be alternative, they could be put together. Let me ask you about the first point that you make. Is your argument that the PTO read signal too broadly to include all data or is the argument really that it didn't limit it specifically to the strobe signal that's in the preferred embodiment? It would be the first point, Your Honor. They took the word signal and they looked at a dictionary definition, one dictionary and they saw a value and then they equated it. Okay. So what is the distinction between the claim construction you would propose for signal and the strobe signal limitation? Well, if you look at column nine, for example, it talks about data transfer control information and that's the signals and it either begins, which is a start, or it ends, which is a terminate. Now the specification did put in quotes strobe and terminate, but if you look at the second clause, it talks about a signal that indicates when to begin. So in a sense, there's no other signal to start, whether you call it strobe or a start signal or an initiate signal, and the signal, the key is the signal doesn't. It doesn't look something up and then do something and then do something. The whole point here was the signal was meant to begin the action, just like a traffic signal. Well, you've got, at least that I can tell, three other patents where you use the phrase strobe signal in the claims, and so why didn't you use strobe signal in the claims or initiation signal or something that is more narrow than the broader term in this particular patent? Well, in this patent, it talks about data transfer control signals and it talks about command control signals. So command control signals could be a write or a read and data transfer control signals could be, you know, start or stop. You're right that at points they say, well, for nomenclature, we're going to call this a strobe signal, but it wasn't really a term of art that was accepted in the industry. There was no need for them to put the word strobe in the second clause to indicate it was starting. It actually said that it was starting. And if you read the entire specification, it's not like this is in one place. Every place throughout the specification, what they're talking about is we want to separate the write and the start signal or the end signal, and we want to send the signal when we actually want to do it. So your entire argument does depend on our conclusion that the alternative embodiment is disclosed but unclaimed. Is that right? So that's the... No. No, it does not. Okay. But that is the third claim construction error. So one would be the signal equal data or value. Two would be even though we separate the two out and we say separate and the claim talks about them in separate paragraphs and that's what the specification talks about. The third error was they took the alternative embodiment, which is said not to work with the strobe and terminate signal. It's not going to work with the signal, and then they said that these claims cover it. And what's unfair and inconsistent is every time we looked at the claim and showed the specification which was entirely consistent, they wouldn't look at it. The one place they do look at it is where there's an alternative embodiment that says it's not going to be used with signals. It's not going to separate out the right and the signal or the right and the value. And it's claimed in a sister patent or a parent patent in the 914 patent, and it claims the lay value right there. But the 914 also claims a strobe signal, right? It says it in a different... So what's left for the 109? Well, actually the 914, if you look at the claim, it's different. It says it's predetermined. It says it sends the start in a predetermined time. So what the big invention here was, was you used to have to, when you sent the right, you'd have to know when to start. And you'd either have to send the delay back at the address or the delay back. What they determined was you don't have to do that. You can send the right, and then exactly when you want to start, start it. And so the 914 doesn't do that. The 914, again, uses delay values and strobe signals in an earlier period in a predetermined time. But even if... So taking those claims construction broadly. But even if the anticipation findings by the board are also flawed, first, they don't... They don't point to one finding in the Farmworld reference. They point to four with an either and or, which is not specific enough to show us where the finding is. Right, but we're supposed to review the judgment, not the opinion, right? Well, no. They're supposed to give particularity. And they didn't say four alternative embodiments. They said four either and or. And how these hinge on each other. Is it one, two, and four? One, three, and four. If any one of them is correct, is it okay? So you just want us to remand for them to articulate better what W is? No, because either way, because A, we think the claim construction, any of the errors is positive. And B, when you get to the four possible combinations, it has to be some combination. I mean, it's not really in dispute how Farmworld works. It basically sends an address with the right, it goes and looks it up, and then something happens. That is not in the same order. That is not in the same arrangement. That is not in the same combination as what we do, which is send the right and then send the same. So, on the front end, they – Is it – so are you saying that it's possible, even if the alternative embodiment is encompassed within the claim, the proper construction of the claim, that even in that alternative embodiment, there's a sequencing? Yes, because what happens in the alternative embodiment is the right and the value are sent together. Now, the 9-4 patent sets forth both the strobe signal and the delay value as start indicators. Why can't the delay value be a start indicator under the patent? Well, the delay value in the way it's working is in the alternative embodiment. Yeah, the non-strobe. That's right. So, the alternative embodiment, the delay value is sent with the right, but that's not Farmworld, because in Farmworld, they send an address to then go look something up in a memory to then go read the memory and do all those extra steps. You're saying neither of the two embodiments are anticipated by Farmworld. That's right. If you think about it, what they were really trying to do was get rid of these registers and make it simpler of how they're doing this, and the – everything but the alternative embodiment in the 109 talks about send the right and then send the signal exactly when you want to start and send it when you want to stop. The alternative embodiment, which we claimed in earlier patents as a delay value, went a little bit of that way. It said, well, we're going to put the delay value together with the right, but that's still better than Farmworld, which has them separate. The government's brief says that for the first time on appeal, Rambis argues that because the parent of the 109 patent, that's 914, expressly claims the alternate delay value, the 109 clearly cannot, which is what you're at now. They say this argument is waived and does not warrant any consideration because it was never made before the board. So is it that? So, Your Honor, the argument that was made before the board was that the alternative And we argued that again and again and again. This is just another example of why that's not the case and why under a case like Augustech where every embodiment does not have to be claimed. I mean, if you think about it, there'd be no need for continuations or divisionals. There's multiple embodiments in a patent, and they're not all claimed in every patent. And so what we just pointed out here, that was our argument, the alternative embodiment without a signal is not covered by a claim with a signal. And we said, and here in the 914 patent, you can find it, and it's claimed right there. Is the 914 prior right to the 109? It's a parent. It's a divisional. And so it was in the queue of the, it was in the chain of application. So the 914 split off and was claimed. And the last thing they did here was they took the company's own prior art, they took the FarmWall patent, which was owned by the S&E, which they tried to improve upon it. They didn't try to, one way to look at this is, if this is so easy, why wouldn't they claim priority back to the earlier FarmWall patent, they owned it. They were trying to improve upon it. It was, FarmWall was a good invention, but it wasn't really dealing with this. Here they wanted to speed up when you were sending the signals in the right and to not use their old way of doing it. The FarmWall patent was cited to the examiner in the earlier patent with only six other patents. It was read by the examiner, it was applied by the examiner, it was overcome by the examiner. And so here, they have to come back and say, okay, signals equal data, rights can be with signals, we're going to read the alternative embodiment in, we're going to choose your prior art that you distinguish and said was inflexible, we're going to then only give you four options, either and or, and at some point, you know, this goes too far, both on the claim construction side as well as… Well, the claim construction, though, I mean, it's a standard we're supposed to be applying. It's the broadest reasonable construction. I understand you say that this isn't reasonable, but it really is supposed to be the broadest construction. It's a different animal than if you were before the district court or even the ITC, right? That's right, Your Honor, but it's not bulletproof and cases like Sukho Service or Abbott Labs say when they go too far. And would you think before reading this patent, would you think of the signal being data? Being an address? When those words are used differently in the claim and they're used differently by any electrical engineer, signals do things. The claims talk about clock signals, they do things. Data is information stored, address. Yeah, but even your argument about signal has a different meaning than data doesn't get me to signal means you have to immediately act. Well, when you look at the claim using different words for different things, which is the starting point, which means they probably don't mean the same thing, and then you look at the specification, which the whole specification is talking about, we want to start and end, start and end, start and end. And there are four steps, there's not a lot of intermediate steps. And then even if you buy their alternative embodiment, when you then go look at the prior art, which requires four and five steps to do this in some combination, we're not sure which. That's inconsistent with net money, it's inconsistent with the finish start, it's inconsistent with okay, now even if, then tell us where it is, and they couldn't do it. So in both ways, it was almost like a gotcha, it was almost like at the beginning, we said look, we have the signal, and they said, well, it could mean this, and you have an alternative embodiment, so we don't cover the alternative embodiment. And then even if we do, it's any one of the four in some combination. And that's not the standard of particularity that the court requires for an anticipation. So if we, again, if we disagree with you on the claim construction issues, especially given the standard we're to employ, do you want us to send it back for application of an anticipation analysis? Well, I don't think, if anticipation requires the same thing, in the same way, in the same order, the alternative embodiment, which we don't think is claimed, but if you believe it is claimed, has the delay value in it. The formal patent doesn't have the delay value in the request. It has three or four other steps in some combination. So under, even under that claim construction, there is not the same arrangement, not the same way it's done. Look how simple the claim is. It sends a write, it sends a signal to do it, it then sends data. It didn't require all these additional steps. And so even under, even if the alternative embodiment was required, the alternative embodiment with the delay value in the request back is not identical to, it's not the same arrangement as, the multiple steps in some combination. All right. And you think we should make that determination here without remand? I've not seen a case where the board says, here's the finding. It can be any one of the four in some combination. That, usually it's, it's claim charges. Here's the element. Here's the element. Here's the element. Here's the element. And they couldn't do that here because the two are different. The, the, the spec at column 10, which talks about 109, which talks about, talks about the delay value in the request packet. And Farmwall talks about looking up to get the delay value out of a register. Those aren't the same. Thank you, Mr. Whalen. We'll restore your rebuttal time at three minutes. Would you give Ms. Stewart an additional three if she needs to use them? Keeps time pretty even. Ms. Stewart, before you even begin with your argument, I have kind of a side point. This same patent is, the clock should be running. Okay. The, the patent has been considered now in seven court proceedings. Two of them have directly considered whether Farmwall anticipates and found that it does not. What consideration does the board give to this extensive litigation when it re-examines? Well, Your Honor, I think the short answer is it considers it, but it has to consider it under the circumstances of those cases. For example, in the ITC case where the 109 patent and the Farmwalled Art was considered, the ITC specifically said they're operating under a different burden. They were looking, they were deferring to the PTO's initial... We're very aware, of course, that there are different claim construction standards and burdens, but there's going to eventually be a rather unseemly situation with patents upheld in one forum and struck down in other forums. This will lead to a great deal of discrediting of the system as a whole. Is the board at all concerned with that? I think the board and the PTO is concerned with that, but it's not raised in this instance because we're not dealing with final decisions. We're dealing with initial decisions of the ITC where they specifically say, we're going to give deference to the original examination before the PTO where they considered... Actually, it was the same specification. So you're expecting the courts to give deference to you, but you just said there are different standards. I'm not really... If there's deference, wouldn't you expect the deference to run in the other direction towards the courts rather than towards an administrative proceeding? Your Honor, respectfully, I think it must depend on the record before the different tribunals. If there was similar arguments made and similar evidence before them and different conclusions were reached, and that was appealed to the federal circuit, we certainly would not want to be coming out with very divergent decisions. I agree with Your Honor. From a policy perspective, that would be problematic. But here, the cases involving the ITC's consideration of the patent informal and what the PTO did were, in fact, different, and there was no final decision by the ITC. Your argument, though, is that the ITC gave deference to the original examiner and the fact that the original examiner had all this art before him or her when the decision to issue the patent was made, but the PTO doesn't give any deference to the original examiner. Is that right? Well, in fact, the PTO is looking at everything anew, and what happened below was a very cursory examination of this particular reference considered in a completely different light. How do you know that? Because Rambis cited a portion of the initial examination of this patent, and we went out to look at it in more context than was cited before this court. What Rambis attempted to do to distinguish, well, successfully— So you can dismiss your own actions and just call them cursory? Even though you have given us this patent, you're going to characterize and dismiss your earlier actions? Well, we have to do what Congress has told us is our responsibility, and they have said when you're going to have a reexamination of a patent, even if it's on the same piece of art that was before you in the original examination, you are charged with looking at it anew. No question about that. It's just that the way you approach it, you say, well, we don't really have to worry about the first one because it was cursory. That's a bit troubling. Well, perhaps that wasn't putting it in the best light. I think what I'm trying to say is Congress has said that if the same reference or a similar reference was considered in a different light, that it doesn't preclude a substantial new question of patentability for reexamination, and that's what happened here. There was a different patent with the same specification, and different arguments were made, and now we have a reexamination with a different patent with the same specification, and new arguments are being made for addressing that. The way they made a pretty good argument, that even if we accepted your extremely broad interpretation of Signal, and even if we accepted that that could be read to not require a particular order in the claim and encompassing both the strobed and the non-strobed embodiments, even if we assumed all that, there still wouldn't be anticipation. Can you address that? Yes, Your Honor. Respectfully, we disagree with counsel for Rambis. In fact, what the board relied on and what the Farmwell patent says is virtually identical to the delay value embodiment described in the patent. I turn your attention to Column 9 of the Farmwell reference, which is on the Appendix 17-605. It says the data block transfer occurs at a later time, specified in the request packet control information. Now, if you look at the patent, the delay value embodiment, it says, in this embodiment, the request packet contains a delay value that indicates to the DRAM when the data specified in the request packet will begin to be sent relative to the time at which the request packet is sent. Basically, I mean, it's not identical, but it's virtually identical. The packet in Farmwell is a byte that tells the DRAM to pick an execution time. That could be one of many in the list there. Whereas, in the claimed invention, the byte that's going to go along with it is going to include the delay value. Well, my response to that would be... That's not anticipation, it has to be your response. It's not the same thing. There's a difference. Once you have a difference, maybe you should go back and look at this for obviousness, but there's a difference. Well, I think the problem is that we're not comparing the teaching of the 109 with the teaching of the 037. What we're comparing is the claim of the 109 with the teaching of the 037, and the claim says nothing that would prohibit the use of registers. It says in Farmwell that the request packet contains the timing information. Now, maybe if you're going to go down into the details, it contains a direction. Well, if you look at the specification, it gives you the context for what this claim is, and it's pretty clear that it's not relying on the register, isn't it? You're talking about a separate strobe in almost every instance. Well, I don't think it's clear because, for example, in the 109 patent, the discussion of the delay value embodiment is rather short, whereas a similar discussion is in Farmwalled, and then they go on to elaborate further and further and further about the way this takes place. But what we're doing is we're comparing the claims. The specification distinguishes Farmwalled, doesn't it? No, Your Honor. It absolutely does not distinguish Farmwalled, and that's a key point here. What the specification distinguishes is a situation in which the timing of the data transfer is going to be predetermined. There is one choice, and that is it. Now, Farmwalled does disclose that option, a single-choice option. That's what Farmwalled does, doesn't it? But Farmwalled goes on to say we can have multiple access times, not just one, and that is not— But they're predetermined. They're in that byte that's sent along. Well, the reference to predetermined—the PCO's reading of the reference to predetermined in the 109 is the reference to the same one of the embodiments in Farmwalled where it says it's predetermined. For example, if you look at column 6 in Farmwalled, which is 17603 in the Joint Appendix, it says each slave may have one or several access time registers, four in a preferred embodiment. And then it says in a preferred embodiment, one access time register in each slave is permanently or semi-permanently programmed with a fixed value. So they're distinguishing within Farmwalled this idea of a single fixed value and the multiple access time registers where there can be variability. And that's very similar to the discussion that's happening in the 109 patent surrounding the— But there's variability in Farmwalled, but it's still variability that is defined by the options that are preset, right? That's correct. 2468 kind of thing. Correct, and I think it's helpful to think about the patent and the prior art and the claim on a continuum. So there's no question that there are disclosures in the 109 patent that are quite variable and quite flexible. And there are disclosures that are more limited. Again, looking at column 10, in prior art systems, the data transfer is dictated by the request, the data transfer, it's inflexible, they go on to say. They talk about the value stored in the register is within the DRAM. All of this is Farmwalled, and that's very different from— I don't know whether it's very different, that would be for someone of skill in the art to say, but it is different from the claimed invention. Well, Your Honor, I think it is Farmwalled in part, but Farmwalled goes on to discuss more flexibility and variance that is not distinguished in the patent. And I think we owe deference to the Board in its fact findings here. Were they supported by substantial evidence? They were supported by substantial evidence. The Board cites extensively from the specification of both the prior art and the 109 patent, and then— Well, even you in your brief don't try to defend what the Board did at the end there when it kept saying, well, it could either anticipate this way or this way or this way and or this way. I mean, it was a bit rough, wasn't it? Well, I think it was, and at first when you read it, it does take you back a little bit. Four theories of anticipation. Anticipation should be very simple. It is the same. Bang. Four theories? That sounds to me like obviousness. The Board really doesn't—I agree this would be a slam-dunk obviousness case, but before us we have anticipation, and I— But you didn't do obviousness. And, of course, if we get into obviousness, then we get to look at secondary considerations, and you might be ahead of yourself to say it's slam-dunk, right? Well, I—you're correct. We're not—obviousness is not before us. But I think the reading that Rambis is taking of the Board's decision is a little bit unfair. First of all, the record is almost 20,000 pages, and what the Board is attempting to do is to respond to a whole litany of arguments and limitations and variations that Rambis is putting before it. But what the Board very clearly says on page 13 of its decision, which is on JA-14 of the Joint Appendix, is a specific singular anticipation decision. It says, based on the 109 patent and the generic claim language, skills artisan reasonably would have considered providing a signal as transmitting or otherwise providing additional control information within the request packet, such as a variable delay value signal. That is the Board's holding. Now, the Board goes on to say, alternatively, A, B, and C, and the Board has to do that because Rambis has said, well, they're sent separately, one sent before the other, and so the Board's going on to say, all right, if it's sent separately, this is how it's sent separately. If one's sent before or after the other, this is how it's sent before or after the other. But it's not fair to say the Board just kind of threw its hands up with four different options and said, you know, pick the best one that works. That's really not what the Board did here. I'd like to respond to a few other points that counsel for Rambis made. One thing counsel said, I was talking about, you know, signals are used in a very specific way here in the patent. It's not a general term. Well, signal is used in the specification over 100 times in many different ways in a general sense. And so then the response is, well, signals can't be generic. Signals must do something. Well, the signal here does do something, and what it does is defined by the claim. And what the claim says is this signal, all it does is it indicates when the memory device is to begin sampling right data. But if I go to the specification to figure out what they mean by signal, I find nothing but discussions about separateness and distinctness and the other aspects of the strobed embodiment. And there would have been a very easy way to avoid a lot of the discussion we're having here today, which would be if Rambis had simply said strobe signal and then had gone on to include in this very broad claim some of the limitations that it's discussing should be read in. But it didn't. It used very broad language. This is the 10th patent in a family, and as the patent has evolved over time, certain claims have been more broad or more narrow. And Rambis brought in the discussion of the 914 parent patent, and I think that makes it really clear here that what they're saying really is something broader because they knew how to limit their claims throughout the evidence of the track record of the patent family. So they said start indicator is the more general term, and then it said more specific terms would be a strobe signal or a delay value. And then over time, you know, 10 patents down the road, they chose just to say signal. But they didn't choose just to say signal. They chose to say signal and then define it in a broad way. Why isn't that sufficient? Well, it's not sufficient when they chose to include such an incredibly broad claim that goes against what I would argue is a very ambiguous, or I guess what I would say is the distinguishing of the prior art, they don't go into a lot of detail. So yes, they're distinguishing the prior art, but then they have this super broad claim one in their 10th patent. So, and I also agree with Your Honor, that certain of what is being discussed in this distinguishing of the prior art is encompassed by Farmold. But Farmold goes on to get more sophisticated than what's distinguished here. It's not just distinguishing something that has an access time register. It's distinguishing something where when the writing of data is going to happen is fixed. The packet comes at point one, the writing is going to happen at point three, and it's always going to be that way. Farmold does disclose that option, but it goes on to discuss more sophisticated options, four different ways it could happen. The master is controlling the timing of these write data commands. And that's very similar to the discussion of the delay value in the 109 patent itself. And given the broadness of the claim that we have here, it's more than fair, regardless of whether the delay value is read to be covered by claim one or not, to say that Farmold anticipates claim one. If Your Honors have no more questions. Thank you. Thank you for your time. Ms. Stewart, Mr. Whalen, you have three minutes. Thank you, Your Honor. I'll be brief. Well, let me interrupt you, so maybe you won't be so brief. But let me go to the last question that the Chief Justice asked. And that had to do with the distinguishing of Farmold. And part of my problem is that you look at the specification and you distinguish Farmold, but then in the following paragraph you talk about the alternative embodiment, which you say it's an alternative embodiment of the invention, and you say the invention actually gives you the flexibility that the prior art did not have. So I guess what I'm trying to understand is if you distinguish the prior art and say that both embodiments of this spec improve on that prior art, how do you then run away from the alternative embodiment? Well, I don't need to run away from it because the invention in the specification eventually does claim it. But let me try to answer your question in two responses. One, it's not just us that say we're distinguishing Farmold there. The ITC and the re-exam requester agreed to that point at A13884. I don't have any problem with that, but what about the following paragraph? So if you take out the alternative embodiment paragraph, what the rest of the entire specification talks about is having a right and a signal, keeping them separate, and stroking it or striking it when you want it to start. That's what they said again and again and again. And that's what this claim, the one on the 914, what this claim is meant to cover. So their goal was to make it really flexible, really fast, and really when they wanted to do it. What they said was in another way to do this that is still better than Farmold, we didn't claim it here, they claimed it someplace else using the word delay value, we're going to put the delay value in the request packet. I just don't understand. If that's all true, why doesn't it actually say that in the claim? The claims are so broad, and at some point you have to pay a price. If you're going to make your claims that broad, then they more likely will read on the prior art. Your Honor, this was a significant invention. I don't think anybody debates that if you used to have this clunky system of having to look up numbers in registers, and you then at least, they admit the claims cover the strobe signal embodiment, the one where you're striking it right away. You've separated out two things, you've enabled that, that's making it a lot faster. You don't have to use these limited sets of look up times. But as you pointed out, even their alternative embodiment, which they later claimed in a different patent, was better because it put the delay value in the request packet. And what my friends from the PTO said was that they read that phrase from the board decision and tried to not read the one, two, three, four alternative. Well, there, what the board said was Farmwold anticipates because it puts the delay value in the request packet like the alternative embodiment, it doesn't do that. It puts an address in that looks it up and tries to eventually figure out what it is. So even the alternative embodiment is better than Farmwold, but the separating out the signals and keeping them separate is much, much better. And the last point I'll make is that not only where are their statements that hurt them, they want to run away from like the board at one, two, three, four. But the examiner here at A863 considered the Farmwold patent, rejected it, and overcame it. And there was only six patents cited in the original examination. So not only did the other courts find it, Farmwold, the old five-year-old patent didn't anticipate, it was distinguished. I mean, why would they distinguish Farmwold and then claim it? They would never do that. Thank you, Mr. Whelan. Thank you. We'll close our morning. All rise. The Honorable Court is now adjourned until tomorrow morning at 10 a.m.